# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ROBERT DENT,

    Petitioner,

    v.

RICHARD MILLER and
THE ATTORNEY GENERAL OF
THE STATE OF MARYLAND

    Respondents..

Civil Action No. TDC-16-0200

## MEMORANDUM OPINION

Petitioner Robert Dent, an inmate at the Roxbury Correctional Institution in Hagerstown, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which he collaterally attacks his 2008 conviction for second-degree sexual offense (anal intercourse) in the Circuit Court for Prince George's County, Maryland. Respondents have filed an Answer, and Dent has filed a Reply. Having considered the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the reasons set forth below, the Petition is DENIED.

## BACKGROUND

### I.    Factual Background

On April 8, 2008, Dent was convicted after a jury trial in the Circuit Court for Prince George's County of committing a second-degree sexual offense (anal intercourse) against Amoy Grant. The jury acquitted Dent of second-degree rape and a separate second-degree sexual offense

(fellatio). On August 1, 2008, Dent was sentenced to 15 years of imprisonment. The following evidence was presented at trial.

On October 2, 2007, Dent invited Grant for dinner at his apartment in Beltsville, Maryland. After dinner, Grant asked her to watch television with him in the bedroom. Grant testified that Dent forced her to perform fellatio and engage in vaginal and anal intercourse. Grant testified she screamed at Dent to stop and screamed in pain. According to Dent, the sex was consensual. He testified that they engaged in vaginal intercourse and he "slipped out of her vagina and went right into her anal." 4/7/08 Trial Tr. at 165, ECF No. 12-2.

Grant left Dent's residence and walked to her apartment in the same complex, from which she called 911 to report that she had been raped. Grant was taken by police officers to the Prince George's County Police Department ("PGCPD"), Criminal Investigation Division, where she gave a statement. The police then drove Grant to the Sexual Assault Center at Prince George's County Hospital, where at 7:30 a.m. on October 3, 2007, Nurse Sue Beckman performed a sexual forensic examination on Grant.

Having been qualified as an expert witness, Beckman testified that prior to examining Grant, she had performed between 240 and 250 exams of this nature, but Grant's was "the worst exam I've ever done." *Id.* at 103. Grant had multiple injuries including swelling and bruising of the hymen, multiple tears in the vaginal area, seven to ten anal tears, and anal bleeding and swelling. Beckman testified that the injuries were consistent with Grant's description of what had occurred to her. Beckman also testified that the injuries sustained would not be found after consensual vaginal intercourse, because "There was a lot of tears and swelling. I can't imagine anybody being able to sustain that much pain from a consensual encounter." *Id.* at 108. After the examination, Detective Darren Bennett of the PGCPD Sexual Assault Unit, drove Grant back to

her apartment. After Grant identified Dent's unit within the complex, Detective Bennett obtained records regarding Dent and had Grant identify him through a photo array. Forensic tests did not reveal the presence of any of Dent's DNA on Grant. Meanwhile, on October 2, 2007 at 11:50 p.m. and October 3, 2007 at 7:38 a.m., Dent sent text messages to Grant stating that he was sorry.

On October 4, 2007, pursuant to a warrant, the police searched Dent's home while he was at work and left a contact card with a telephone number for the PGCPD. Using that phone number, Dent called the same day and asked for the opportunity to come to the police station to give his side of the story. When Dent arrived, Detective Bennett read him his rights under *Miranda v Arizona*, 384 U.S. 436 (1966), and had him sign an Advice of Rights and Waiver Form in which he waived his *Miranda* rights. During the interview, which was video and audio recorded, Dent demonstrated to Detective Bennett the positions and sex acts that he had engaged in with Grant in an effort to convince him that the encounter was consensual and that the anal sex was accidental. Although an arrest warrant for Dent had already been issued, it had not been served. After the interview concluded, Detective Bennett executed the warrant and arrested Dent.

## II. Procedural History

Dent appealed his conviction to the Court of Special Appeals of Maryland. He presented one question for review: Did the court err by denying his motion to suppress his statements to police? In an unreported opinion filed on November 10, 2010, the Court of Special Appeals affirmed Dent's judgment of conviction. Dent did not file a petition for a writ of certiorari to the Court of Appeals of Maryland.

On April 26, 2011, Dent filed a Petition for Post-Conviction Relief in the Circuit Court for Prince George's County ("the post-conviction court"). After filing a *pro se* supplement to the petition, and withdrawing two claims after the hearing on the petition, Dent's claims presented to

3

the post-conviction court were that trial counsel provided constitutionally ineffective assistance by failing to: (1) object to the lack of unanimity of the jury verdict; (2) object to the Beckman's testimony, which bolstered the credibility of the victim; (3) object to the admission of Beckman's report; (4) assert in the motion for judgment of acquittal that there was no evidence of actual force; (5) object to the procedure employed for addressing two jury notes; (6) undertake a reasonable investigation of the case; (7) call Dent to testify at the suppression hearing or advise him of his right to do so; (8) obtain an expert to rebut Beckman's testimony and report; and (9) object to prosecutorial misconduct arising from the prosecutor's alleged misstatement of the evidence during closing argument, which arguably shifted the burden of proof from the State to the defendant. Dent also asserted ineffective assistance of counsel based on trial and appellate counsel's failure to object to or appeal the State's request for a continuance of trial. Finally, Dent claimed that trial counsel provided ineffective assistance by virtue of the cumulative effect of these errors.

In a written opinion, the post-conviction court denied the state petition on October 31, 2013. In so ruling, the post-conviction court analyzed each of Dent's ineffective assistance of counsel claims and concluded that it was "abundantly clear" trial counsel's purported deficient representation had "nothing to do with [Dent's] convictions." Post-Conviction Op. at 11, ECF No. 12-8. The post-conviction court found that Dent failed to prove any of his allegations of deficient performance or that there was any prejudice resulting from such performance. "Rather, it is patently obvious," the post-conviction court stated, that Dent was convicted based on "his sexual interaction with the victim in his apartment" and "his own legal or tactical missteps two days after the incident, namely, going by himself to the police station and voluntarily and willfully performing a clumsy, highly incriminating re-enactment of his sexual gyrations" to convince

4

police that the anal intercourse complained of by Grant was an 'accidental' slip." *Id.* at 11-12. The post-conviction court characterized Dent's story as "incredible" to the detectives and to the jury, stated that "no amount of skillful lawyering" could have reversed Dent's self-inflicted legal damage, and noted that acquittal of Dent on two counts was "a testament to his lawyer's skill in handling this case." *Id.* at 12. The post-conviction court thus concluded that Dent's "misguided attempt" to blame his attorney for the verdict was a "further manifestation of his self-serving almost <u>delusional</u> denial of responsibility for his own actions." *Id.*

Dent filed an Application for Leave to Appeal, raising the same claims presented to and decided by the Circuit Court on post-conviction review. On December 2, 2015, the Court of Special Appeals summarily denied the Application for Leave to Appeal.

## DISCUSSION

In his Petition to this Court, Dent asserts the same claims of ineffective assistance of counsel that he raised in his Application for Leave to Appeal the Denial of Post-Conviction Relief. The Court will address each argument in turn.

## I.    Legal Standard

A petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2012). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.  28 U.S.C. § 2254(d).  "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010).  The state court's application of federal law must be "objectively unreasonable." *Id.* Likewise, a state court's factual determination as relevant to § 2254(d)(2) "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Nicolas v. Attorney Gen. of Md.*, 820 F.3d 124, 129 (4th Cir. 2016).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

When a federal habeas court is undertaking an evaluation pursuant to 28 U.S.C. § 2254(d) but the highest state court to consider the matter summarily denied a request for further review without analysis, the federal court must "look through" the summary decision to the last reasoned state court decision. *Brumfield v. Cain*, ___ U.S. ___, 135 S. Ct. 2269, 2276 (2015).  Here, where the Court of Special Appeals of Maryland summarily denied Dent's Application for Leave to

Appeal, the last reasoned opinion was the decision issued by the Circuit Court of Prince George's County on the Petition for Post-Conviction Relief.

## II.    Ineffective Assistance of Counsel

Because Dent's claim of constitutional error is that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution, the Court must analyze his claims under clearly established federal law on this issue. To succeed on an ineffective assistance of counsel claim, a petitioner must meet the two-part standard set by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense" in that "counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.*

On the issue of deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). "Judicial scrutiny of counsel's performance must be highly deferential" and not based on hindsight. *Strickland,* 466 U.S at 689. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Under the Sixth Amendment, a defendant "has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)).

On the issue of prejudice, "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman*, 477 U.S. at 374. To

establish prejudice, a defendant must show that "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 375.

## A.    Lack of a Unanimous Verdict

Dent alleges ineffective assistance of counsel based on his trial counsel's failure to object to the alleged failure to establish unanimity among the jury arising from an error in the process of polling the jury. According to the trial transcript, after the verdict and after the jury was polled, the jury foreman informed the judge, that "they forgot to poll one." 4/8/08 Trial Tr. at 16, ECF No. 12-3. The Court immediately called on Juror No. 12, who stated that the verdict stated by the foreman was her verdict as well. Dent appears to claim that the polling of the last juror was not valid because other jurors may have already left the courtroom.

The post-conviction court denied this claim because the trial judge had corrected the "minor oversight" of failing to poll Juror No. 12 by polling her before the jury was actually discharged. Post-Conviction Op. at 3. The post-conviction court concluded that Dent had failed to "even minimally establish the predicate" for his claim of failure to object to a non-unanimous verdict because the verdict was, in fact, unanimous. *Id.* at 4. In his Application for Leave to Appeal, Dent argued that the individual polling of Juror No. 12 created possible pressure and undue influence on her and was inconsistent with "the Law of Polling." Appl. Leave Appeal at 3, ECF No. 1-4. In *State v. Santiago,* 985 A.2d 556 (Md. 2009), the Court of Appeals of Maryland held that a trial court must either poll the jury or "hearken" it, a procedure consisting of inquiring in open court, before the jurors are discharged, whether the jury agrees with the verdict announced by the foreperson. *Id.* at 558 ("[A] jury verdict, rendered and announced in open court, that is neither polled nor hearkened is not properly recorded and is therefore a nullity."). Here, however,

the record establishes that all 12 jurors in Dent's case were polled in open court. When polling occurs, hearkening is not necessary. *Id.* at 561. This Court agrees that where all 12 jurors answered affirmatively when polled, that the record establishes a unanimous verdict. Where Dent has identified no authority for the view that the delay in polling Juror No. 12, or the possible absence of certain other jurors by the time it occurred, rendered the verdict non-unanimous, the Court finds that the post-conviction court's denial was a reasonable application of law.

As part of this claim, Dent testified at the post-conviction hearing that he drove the jury foreman home after trial, and that the foreman stated that he told the jury to answer "Yes" when the judge polled the jury. Post-Conviction Op. at 4. The post-conviction court characterized this testimony as "incredible," ruled that even if it were considered, there was no evidence that Juror No. 12 or any other juror did not agree with the verdict, and noted that under Maryland law, jurors cannot impeach their own verdict. *Id.*

The post-conviction court's factual finding that the testimony was incredible was not an "unreasonable determination of the facts" and therefore, by itself, provides a basis to reject this claim. 28 U.S.C. § 2254(d). Moreover, the Court agrees with the post-conviction court that where all 12 jurors individually stated, under oath, that they agreed with the verdict, Dent's allegation, which even if true may only establish discussions about proper courtroom procedure, does not establish the lack of a unanimous verdict. Finally, where Dent has not asserted that he informed trial counsel about this encounter and raised it for the first time at his post-conviction hearing, there could be no ineffective assistance based on trial counsel's failure to object to the verdict because of this encounter. The claim relating to jury unanimity provides no basis for federal habeas corpus relief.

**B. Nurse's Testimony and Report**

Dent also claims ineffective assistance based on trial counsel's failure to object to the opinion testimony of the forensic nurse, Sue Beckman, as improperly bolstering Grant's testimony, and to the admission into evidence of her report. In particular, Dent objects to Beckman's testimony that the injuries she observed were consistent with Grant's account of how they were sustained.

The post-conviction court rejected Dent's claims because he provided "no persuasive authority" to establish why Beckman's testimony or report should have been stricken. Post-Conviction Op. at 4. The post-conviction court also found that defense counsel's cross examination of Beckman was "well within the bounds of professional competence." *Id.* On cross examination Beckman acknowledged that none of the DNA collected from Grant matched Dent's DNA, and that "rough sex" could result in some of the injuries that Beckman observed. 4/7/08 Trial Tr. at 109-10.

Where Beckman was qualified as an expert witness in sexual assault forensic examination, her testimony, including her opinion that the injuries were consistent with Grant's account of non-consensual sex, was based on her observations of Grant and grounded in her training and experience. It was therefore admissible. *See, e.g.*, Fed. R. Evid. 702.

As for Beckman's report, Dent does not identify a basis for its inadmissibility. Because Beckman likely created her report in the ordinary course of her duties at Prince George's County Hospital, and it likely included statements of medical diagnosis, there are plausible grounds for its admissibility. *See, e.g.*, Fed. R. Evid. 803(4), 803(6). Moreover, Dent has not identified any part of the report which would not be cumulative of Beckman's testimony and thus has failed to show prejudice from any failure to object. Where the post-conviction court's determination relating to

Beckman's testimony and report was not based on an unreasonable application of clearly established federal law, the Court will deny the Petition as to this claim. *See* 28 U.S.C. § 2254(d).

### C.    Evidence of Force

Dent asserts that his trial counsel was deficient for failing to argue in a motion for judgment of acquittal that there was a lack of evidence of actual force to support the charge of second-degree sexual offense.   A review of the record reveals that there was specific evidence presented at trial that Dent used force against Grant, most particularly Beckman's testimony of the severe injuries to Grant that were the "worst" she had seen in an examination.  4/7/08 Trial Tr. at 103.  The post-conviction court correctly concluded that this claim is "frivolous."  Post-Conviction Op. at 6.  This Court agrees that "failing to make a motion with no chance of success could not possibly prejudice the outcome."  *Id.*

### D.    Jury Notes

Dent also faults his trial counsel for failing to object to the trial court's procedure in responding to two jury notes, including one in which the jury requested instruction on the law regarding post- penetration withdrawal of consent.  Before sending the jury into deliberations, the trial judge stated that if there was a need to communicate with the court, the foreman should "put it in writing and sign it and it will become part of the record of our proceedings."  4/8/08 Trial Tr. at 3.  During deliberations, the jury sent a question to the trial judge asking whether if a woman consented to sex and then after penetration withdrew her consent, continued sexual intercourse would constitute rape.  The trial judge consulted with the prosecutor and defense counsel, and all agreed that the issue was addressed in *Baby v. State,* 916 A.2d 410 (Md. 2007), in which the Court of Special Appeals of Maryland held that if a woman consents to penetration and withdraws consent following penetration, there is no rape.  *Id.* at 429.  The trial judge therefore sent a note to

the jury, with the agreement of both counsel, stating, "Under Maryland law, if a woman consents prior to penetration and withdraws consent following penetration, there is no rape." 4/8/08 Trial Tr. at 6.

Approximately three hours later, the jury sent a note stating that it had agreed on two counts but not on a third. The trial judge read the note into the record: "We are all agreed on one and two, but cannot agree on three. We are seven to five on balance, on number three. What can we do?" *Id.* at 9. Again, the trial judge responded in writing, with the assent of both counsel, and instructed the jury to continue deliberations. Dent argues that the trial judge's written responses were inadequate, and the judge instead should have called the jury into the courtroom and given additional oral instructions. According to Dent, his trial counsel's failure to object to this procedure was ineffective assistance.

Notably, Dent has identified no authority for the position that a written response is inadequate. The post-conviction court found that the written responses to jury notes were proper and complied with Maryland law. *See Baby*, 916 A.2d at 429. This Court agrees that there is nothing improper about a written response to a jury note, and that the trial court's answer relating to the question accurately stated the law at the time. *See id.*

Moreover, as noted by the post-conviction court, the written response, which instructed that pre-penetration consent would prevent a finding of rape, was a favorable instruction for Dent and likely resulted in his acquittal on the rape charge. As noted during the post-conviction proceedings, on April 16, 2008, approximately one week after the trial, the Court of Appeals of Maryland reversed *Baby* and held that "a woman may withdraw consent for vaginal intercourse after penetration has occurred, and that after consent has been withdrawn, the continuation of vaginal intercourse by force or the threat of force may constitute rape." *State v. Baby*, 946 A.2d

463, 486 (Md. 2008). Where the trial judge's written response provided a highly favorable instruction to the jury, Dent cannot show how the procedure followed resulted in prejudice. This claim provides no cause for federal habeas relief and is denied.

### E.    Failure to Investigate

Dent also argues that his trial counsel was ineffective because she failed to investigate certain potential evidence. Specifically, Dent asserts ineffective assistance of counsel based on the failure to take the following investigative steps: (1) interviewing his neighbor; (2) conducting a noise level test of his apartment; (3) seeking fingerprints from the remote control to his television and from three $100 bills he allegedly gave to Grant; and (4) photographing his apartment. The post-conviction court found Dent's claims unavailing because he failed to demonstrate how this information would have changed the outcome of his trial.

Counsel has the "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, while *Strickland* requires counsel to "conduct a reasonable investigation into potential defenses," it does not oblige counsel to "uncover every scrap of evidence that could conceivably help their client." *Green v. French*, 143 F.3d 865, 892 (4th Cir. 1998), *overruled on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000). The burden to show deficiency rests squarely on the defendant. *See Burt v. Titlow*, 571 U.S. 12, 22–23 (2013). To succeed on a claim of ineffective assistance for failure to investigate, a petitioner must also demonstrate prejudice by showing that adequate investigation would have uncovered facts that, if presented, would have created a reasonable probability of a different outcome. *See Strickland*, 466 U.S. at 694; *see also Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (rejecting an ineffective assistance claim due to the failure

13

to "advise [the court] of what an adequate investigation would have revealed" or to what newly identified witnesses might have testified).

Dent's claim that his counsel should have investigated whether his next-door neighbor heard screaming on the night of the incident fails because he has not demonstrated that this unnamed witness would have given favorable testimony. As the post-conviction court noted, to establish prejudice due to counsel's failure to investigate or call a potential witness, a petitioner must show that the witness would have testified, and that the testimony would have likely changed the outcome of trial. *See Bassette*, 915 F.2d at 940 (rejecting a failure to investigate claim base on the lack of a "proffer of testimony from a witness or witnesses he claims his attorney should have called"). The post-conviction court's conclusion that Dent has not established prejudice because his claim amounts to "mere speculation as to whether the neighbor heard anything or would have testified to having heard anything," Post-Conviction Op. at 7, is a reasonable application of the law. Likewise, Dent's claim that his trial counsel should have arranged for a noise level test of his apartment to prove his neighbors would have heard any screaming from his bedroom fails because, as the post-conviction court reasonably concluded, "there is no indication that anything the neighbors heard or didn't hear would have changed the outcome of the verdict." *Id*. at 8. Where Dent's has not shown that such a test would have been favorable or would have impacted the outcome of the case, he has not established prejudice as necessary to prevail on this claim. *See Strickland*, 466 U.S. at 687; *Bassette*, 915 F.2d at 940-41.

As for Dent's claims that his trial counsel should have arranged for fingerprinting of the remote control and three $100 bills, Dent's post-trial claim that Grant used the remote control in the bedroom before the sexual encounter is not supported by any of the testimony at trial. Dent himself, in his testimony, did not make this claim. The post-conviction court, noting that Grant's

14

presence in the apartment and bedroom were not in dispute, thus correctly concluded that the presence of fingerprints on the remote control "would not aid the jury in determining the timing of the assault" and that it was unclear how it "would have changed the outcome of the case." Post-Conviction Op. at 7.

Dent's claim about the $100 bills was that he gave Grant a stack of bills before the sexual encounter, that she put them in her purse, and that he took the money out of her purse after the encounter. Detective Bennett testified that during his interview, Dent pulled out paper currency and said that Grant's fingerprints could be taken from it. Bennett testified that he did not test the bills for fingerprints because so many people handle money that it is difficult to obtain prints from it, and that Dent himself had put his hands over the top of the money. Under these circumstances, and where Dent's testimony established that he handled the money twice after Grant allegedly did, the post-conviction court reasonably concluded that such testing was "not likely [to] render any results that would be helpful to the jury." *Id.* at 7-8. Particularly where Dent was convicted only of the sexual offense relating to anal intercourse, and the jury thus did not conclude that the entire encounter was nonconsensual, there is no basis to conclude that fingerprinting would have altered the outcome of the trial.

Lastly, Dent's claim that trial counsel's failure to arrange for photographs of his apartment is unavailing. Although Dent asserts that photographs would have undermined Grant's testimony by showing that there was a phone in the bedroom and no obstructions to her exit from the bedroom, Detective Bennett testified that there no such obstructions, so there was no dispute on that point. As the post-conviction court correctly noted, Grant's testimony at trial was that the assault happened quickly, and that Dent was on top of Grant, so the absence of obstacles would not cast doubt on her testimony. The presence of a telephone also would not undermine Grant's

testimony. Grant stated that she was physically held down by Dent, and that when she had the opportunity, she fled to her own apartment, in the same complex, and called 911 from her cellphone while there, a more logical course of action for a victim of sexual assault than to use the phone in the perpetrator's apartment while he was present.

In all of the above allegations regarding counsel's failure to investigate, the post-conviction court's determination was as a proper application of *Strickland* to the facts. Where counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," Dent has not met his burden to show that counsel's performance was deficient. *See Burt*, 571 U.S. at 22–23. Although some of these investigative steps theoretically could have yielded relevant evidence of marginal value, they fall into the category of the "scraps" of evidence that counsel is not required to pursue. *See Green*, 143 F.3d at 892; *see also Washington v. Watkins*, 655 F.2d 1346, 1356 (5th Cir. 1981) (stating that "counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers"); *McCoy v. Maryland*, No. JKB-14-3845, 2017 WL 4310082 *10, (D. Md. Sept. 28, 2017) ("Defense attorneys do not have infinite amounts of money and time with which to investigate and pursue substantially all plausible lines of defense, nor is such conduct realistic or constitutionally mandated."). For the reasons stated above, Dent has not established that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Burger v. Kemp*, 483 U.S. 776, 795 (1987). Dent also has not shown that but for the failure to undertake these investigative steps, the outcome of his trial would have been different. Therefore, this Court concludes that the post-conviction court's denial of this claim was a reasonable application of the law.

### F.    Suppression Hearing Testimony

Dent also claims that his trial counsel was ineffective for failing to call him as a witness at the suppression hearing and for not advising him of his right to testify at the hearing, thereby foreclosing the opportunity to provide direct evidence about the involuntary nature of his statements to the police. The post-conviction court denied relief based on Dent's failure to show prejudice in that he did not establish that his testimony would have changed the outcome of the hearing. The post-conviction court also found that trial counsel's decisions were "discretionary" and "tactical" to limit Dent's exposure to impeachment. Post-Conviction Op. at 8.

Dent has not identified case law establishing a right to testify at a suppression hearing. The Court need not decide whether such a right exists and applies here, because Dent has not shown prejudice. Although a suppression motion challenging statements made to law enforcement ordinarily could turn on the credibility of the defendant's assertion that he did not act knowingly and voluntarily in waiving his *Miranda* rights or in giving his statements, the circumstances of this encounter provided significant indicia of voluntariness apart from witness testimony. First, Dent affirmatively called the police and asked for the opportunity to give his side of the story. Second, Dent signed a *Miranda* waiver form. Third, there was a video recording of the interview, such that the trial court could both hear and observe all of Dent's statements and actions, and those of the interviewing detective, in making an assessment of voluntariness. Significantly, Dent has not identified any assertion by the detective at the suppression hearing that he would have refuted, or any portion of the video recording that he would have explained, such that his testimony could have altered the outcome of the motion. Under these circumstances, the post-conviction court's determination that Dent did not establish prejudice in that his testimony could have changed the outcome was a reasonable application of *Strickland* to the facts of the case. This claim is denied.

## G.    Defense Expert Witness

Dent has also argued that trial counsel was ineffective because she failed to retain an expert witness to rebut Beckman's testimony and forensic report. The post-conviction court noted that trial counsel had in fact consulted with an expert and used the expert's information to cross-examine Beckman. Although Dent has noted the lack of documentation submitted to corroborate this account, the post-conviction court credited trial counsel's statement, and that factual determination is reasonable. *See* 28 U.S.C. 2254(d)(2).

The failure of a defense counsel to retain an expert witness to counter the prosecution's expert is not, in and of itself, deficient performance. *See Harrington v. Richter*, 562 U.S. 86, 106 (2011) (holding that defense counsel's failure to consult with forensic blood experts or to offer expert evidence was not ineffective assistance of counsel under the circumstances). Here, trial counsel consulted with an expert and sought to call the expert in the defense case, but the expert was not available on the date that the trial court required such testimony. Although trial counsel proffered that the expert would have testified "about the sphincter and the type of cuts indicated in the report," 4/7/08 Trial Tr. at 145, neither trial counsel then nor Dent now has provided a basis to conclude that such an expert witness would have been able to refute Beckman's testimony that the injuries were consistent with Grant's account. Under these circumstances, the post-conviction court's determination, that this claim fails based on Dent's failure to demonstrate how calling the expert rather than using information provided by the expert to cross-examine Beckman would have altered the outcome of trial, was not contrary to and did not involve an unreasonable application of federal law. *See* 28 U.S.C. 2254(d)(1).

## H. Closing Argument

Dent further argues that his trial counsel was ineffective when she failed to object to the prosecutor's statement during closing argument, referring to Grant, that "She could have said no she was standing up and he tackled her." 4/7/08 Trial Tr. at 188. Although Grant did not, in fact, testify that Dent tackled her, Dent has not and cannot establish that this isolated misstatement, and the failure to object to it, resulted in prejudice because the closing argument in its entirety clearly conveyed the prosecution's view that Dent did not initiate the sexual assault by tackling her. Immediately before this misstatement, the prosecutor stated that Grant "lays at the far end of the bed" and that Dent "straddles her check, sits on her chest," before forcing himself upon her. *Id.* at 187. Then, immediately after the misstatement, the prosecutor again describes the encounter by stating, "She told you she laid on the bed. All of a sudden, the defendant comes over, straddles her chest" and forced himself on her. *Id.* at 188. Then later in the closing argument, the prosecutor again stated, "She was lying across the bottom of the bed when all of a sudden, the defendant straddled her chest with his legs." *Id.* at 192. Where the prosecutor on three occasions described the initial attack the same way, which did not involve tackling, it was clear that the misstatement was not intentional and that there was little to no risk that the jury would rely on it. Accordingly, the post-conviction court's conclusion that there was "no clearly 'out of bounds' argument" is a reasonable reading of the facts, 28 U.S.C. 2254(d)(2), and because Dent has not provided a basis to find that an objection to the misstatement could have resulted in a different outcome, its denial of this claim was a reasonable application of *Strickland.*

Relatedly, Dent's claim that his trial counsel's failure to object to this misstatement impermissibly shifted the burden of proof from the prosecution to the defense is meritless. Dent has offered no authority to support the theory that such a misstatement shifts the burden of proof. The post-conviction court's rejection of this argument as "baseless and borderline frivolous," Post-

Conviction Op. at 10, is not an unreasonable application of *Strickland.* The Court will thus deny both claims relating to the prosecutor's misstatement.

## I.     Continuance of the Trial

Dent claims that his trial counsel failed to preserve for appellate review, and his appellate counsel failed to raise on appeal, the claim that the trial court by granting a continuance to allow for fair consideration of late-disclosed medical evidence to be offered at trial. The post-conviction court denied this claim, noting that the grant of a continuance is wholly within the discretion of the trial court and that "there is <u>zero</u> chance, in this Court's opinion, that the trial judge's grant of a continuance in the case would have been grounds for a successful appeal, and failure to preserve a meritless issue for appeal does not constitute ineffective assistance." Post-Conviction Op. at 10. The post-conviction court further observed that the continuance also benefited the defense by allowing trial counsel time to review that report.

The post-conviction court is correct that continuances are reviewed under a highly deferential standard. *See e.g., Hill v. Ozmint*, 339 F.3d 187, 197 (4th. Cir. 2003). Dent does not identify how either counsel's decisions to refrain from contesting these fell below an objective standard of reasonableness or prejudiced the outcome of the proceedings against him to satisfy *Strickland* standard. The Court denies this claim because the post-conviction court's ruling was not an unreasonable application of *Strickland* and was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

## J.     Cumulative Effect of Ineffective Assistance

Finally, Dent argues that the cumulative effect of counsel's errors establish ineffective assistance of counsel. The United States Court of Appeals for the Fourth Circuit, however, has rejected such cumulative analysis and held that ineffective assistance of counsel claims are to be

reviewed individually, not collectively. *See Fisher v. Angelone*, 163 F.3d 835, 852–853 (1998). Where, as here, the Court has found that none of Dent's individual claims establish constitutional error, the cumulative effect likewise does not establish such error. *See id.* Having examined the state court rulings and independently examined the record, this Court is satisfied that the post-conviction court's rejection of this claim is neither contrary to clearly established federal law, nor did it involve an unreasonable application of that law. *See* 28 U.S.C. § 2254(d).

## III.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, Dent may not appeal this ruling without a certificate of appealability. 28 U.S.C. §2253(c)(1).

A certificate of appealability may issue only if the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773-74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

Upon review of the record, this Court finds that Dent has not made the requisite showing. The Court therefore declines to issue a certificate of appealability. Dent may still request that the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b).

**CONCLUSION**

For the foregoing reasons, Dent's Petition for Writ of Habeas Corpus will be DENIED.

The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date:   January 28, 2019

THEODORE D. CHUANG
United States District Judge